# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARK J. KOLODY,                        )
                                       )
               Plaintiff,              )
                                       )
     v.                                )          1:09CV829
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social          )
Security,[1]                           )
                                       )
               Defendant.              )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Mark J. Kolody, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (See Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __") and the parties have filed cross-motions for judgment (Docket Entries 17, 19). For the reasons that follow, the Court should remand this case for further administrative proceedings.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution for Michael J. Astrue as Defendant in this case, by operation of Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

Plaintiff applied for DIB and alleged a disability onset date of December 1, 1999. (Tr. 56-60.) After denial of that application, both initially and upon reconsideration (Tr. 32, 33, 40-41, 44-47), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 38-39). Plaintiff, his attorney, his wife, and a vocational expert ("VE") appeared at the hearing. (Tr. 242-60.) The ALJ thereafter determined that Plaintiff did not qualify as disabled under the Act. (Tr. 11-24.) The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 4-7.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.   [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2004.
>
> 2.   [Plaintiff] has not engaged in substantial gainful activity since December 1, 1999, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3.   [Plaintiff] has the following severe impairments: early mild Parkinson's disease and depression (20 CFR 404.1520(c)).
>
> . . .
>
> 4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

. . .

> 5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he cannot perform any climbing of ladders, ropes or scaffolding or more than occasional climbing of stairs, balancing, handling, or fine manipulation. He should avoid work hazards and work exposing him to dust, fumes, smoke, chemicals, or noxious gases. [Plaintiff] has a limited but satisfactory ability to relate to coworkers; interact with supervisors; deal with work stresses; maintain attention and concentration; understand, remember, and carry out instructions; respond appropriately to changes in the work setting; work closely with others without undue distraction; complete a normal workweek; accept instructions/criticism appropriately; and set realistic goals.

(Tr. 16-23.)

Given the findings regarding residual functional capacity ("RFC"), the ALJ ruled that Plaintiff could not perform his past relevant work as an auto body painter. (Tr. 23.) However, based on the VE's testimony, and after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs "exist in significant numbers in the national economy that [Plaintiff] can perform." (Id. (citing 20 C.F.R. §§ 404.1560(c) and 404.1566)). Accordingly, the ALJ declared Plaintiff not under a "disability," as defined in the Act, at any time from his onset date through the date of decision. (Tr. 24.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v.

<u>Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Hall, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity

_____

[2] "Through the fourth step, the burden of production and proof is on the claimant.   If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

**Assignments of Error**

Plaintiff argues that substantial evidence fails to support the Commissioner's findings at steps three and five and/or that the ALJ incorrectly applied the law at these steps. (Docket Entry 18 at 4-17.) Specifically, Plaintiff contends that the ALJ: (1) improperly evaluated the credibility of Plaintiff's symptom reporting in formulating the RFC (resulting in error at step five) (id. at 4-9); (2) failed to adequately assess the opinions of Plaintiff's treating physicians (again undermining the RFC and step five ruling) (id. at 9-12; see also Docket Entry 21 at 3); and (3) erroneously concluded at step three that Plaintiff did not meet a listing (id. at 12-17; see also Docket Entry 21 at 1-3). Defendant contends otherwise and urges that substantial evidence supports the ALJ's determinations. (Docket Entry 20 at 3-13; see also Docket Entry 23 at 1-2.) Aspects of each of the foregoing assignments of error require a remand for further administrative proceedings.

**1. Symptom Credibility**

In formulating Plaintiff's RFC, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce [his] alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they [we]re inconsistent with the [RFC] assessment . . . ." (Tr. 21.) The ALJ's decision

then sets out reasons for that finding. (Tr. 21-23.) According to Plaintiff, the ALJ based "her entire credibility attack on three allegations which are not true: 1. That [Plaintiff] has refused to be compliant with his medications and doctor's requests for additional treatment and testing; 2. That the fact that he has had no emergency treatment or inpatient care is dispositive of a finding of disability[;] and 3. The fact that he tried to help his wife run her business proves that his symptoms are not as severe as he claims." (Docket Entry 18 at 4-5 (internal citations omitted).) Because the ALJ's decision does not reflect consideration of the fact that financial constraints may have caused Plaintiff's failure to comply with prescribed handling of his Parkinson's disease, the Court should remand for further administrative proceedings.

The Social Security Administration's Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements ("SSR 96-7p"), 1996 WL 374186 (July 2, 1996), as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Craig, 76 F.3d at 594 (quoting 20 C.F.R.

§ 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, and the extent to which they affect his or her ability to work. Craig, 76 F.3d at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

Here (as quoted above), the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that his statements about the extent of his symptoms lacked credibility in so far as he claimed a greater level of impairment than the ALJ found (as reflected in the RFC). (Tr. 21.) In particular, the ALJ acknowledged that Plaintiff "ha[d] some limitations due to [Parkinson's]," but declared that she was "not persuaded that he [wa]s as limited as he allege[d]." (Tr. 22.) As support for that judgment, the ALJ stated that Plaintiff "ha[d] been less than compliant with recommended evaluations/investigations needed to more closely differentiate his condition. Failure to seek appropriate medical treatment or follow recommendation [sic] from

a physician is a reason to discount the alleged severity of a condition . . . ."  (<u>Id.</u>)  The ALJ thereafter concluded the credibility analysis by reiterating that "claimant's refusal to undergo diagnostic testing which would possibly eliminate a neurologically based disorder cannot be ignored."  (Tr. 23.)

Plaintiff has conceded that he was "not always compliant with his medication regimen, and he was unable to get some tests that were recommended by his doctors."  (Docket Entry 18 at 5.) However, citing SSR 96-7p and <u>Lovejoy v. Heckler</u>, 790 F.2d 1114, 1117 (4th Cir. 1986), Plaintiff contends that "[t]he ALJ did not properly consider that [Plaintiff] often lacked the funds to purchase his medication and pay for additional treatment . . . ." (Docket Entry 18 at 6.)  The law and the record bear out Plaintiff's contention on this point.

The Social Security Ruling cited by Plaintiff provides that:

> the adjudicator <u>must not</u> draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment <u>without first considering</u> any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment. . . .  For example:
> . . .
>    *The individual <u>may be unable to afford treatment</u> and may not have access to free or low-cost medical services.

SSR 96-7p, 1996 WL 374186, at *7-8 (emphasis added); <u>see also</u> <u>Lovejoy</u>, 790 F.2d at 1117 (declaring that "[a] claimant may not be penalized for failing to seek treatment []he cannot afford; '[i]t

flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him'" (quoting <u>Gordon v. Schweiker</u>, 725 F.2d 231, 237 (4th Cir. 1984))). Here, the record documents a number of reports by Plaintiff of inability to pay for recommended Parkinson's care. (Tr. 141, 150, 199, 200.) The ALJ's credibility analysis makes no mention of that evidence. (Tr. 22-23.) Given the materiality to the ALJ's credibility finding of Plaintiff's failure to take prescribed measures for his Parkinson's and the significance of that credibility finding to the RFC determination (and thus the step five ruling), the Court should order a remand.

Plaintiff's other two challenges to the ALJ's symptom credibility analysis, however, establish no error. First, contrary to Plaintiff's assertion, the ALJ did not rule in blanket fashion that "the fact that [Plaintiff] ha[d] no emergency treatment or inpatient care [wa]s dispositive of a finding of disability" (Docket Entry 18 at 5); instead, the ALJ simply (and accurately) recognized that, "[w]ith respect to the diagnosis of depression, Plaintiff ha[d] no history of formal mental health treatment . . . [and] ha[d] not been treated with any psychotropics . . . [or] required emergency care or inpatient treatment . . . ." (Tr. 22.)[5]

_____

[5] To the extent Plaintiff focuses on the fact that "Parkinson's disease is a progressive degenerative disease that is typically treated with medications," such that "[a] lack of emergency or inpatient care for [that] condition [would] not demonstrate that [his] condition is not disabling," (Docket Entry 18 at 6),

Moreover, unlike with his Parkinson's, the record does not indicate that Plaintiff failed to seek treatment for depression because of lack of funds. In the absence of evidence that impecuniosity caused Plaintiff to forego care for depression, the ALJ acted permissibly by considering lack of treatment history in assessing the credibility of Plaintiff's symptom reporting as to depression. See SSR 96-7p, 1996 WL 374186, at *7-8.

Finally, Plaintiff asserts the ALJ improperly concluded that "[t]he fact that [Plaintiff] tried to help his wife run her business proves that his symptoms are not as severe as he claims." (Docket Entry 18 at 5.) In this regard, citing Cornett v. Califano, 590 F.2d 91, 94 (4th Cir. 1978), and Gentle v. Barnhart, 430 F.3d 865, 867 (7th Cir. 2005), Plaintiff contends that brief or intermittent work, particularly undertaken due to financial strain, "is not dispositive of disability." (Docket Entry 18 at 7.) The ALJ, however, did not discount Plaintiff's symptom reporting simply because he attempted work. Rather, the ALJ pointed out evidence indicating that Plaintiff described the purchase of the business in question in a manner that suggested he intended to work at it (and thus believed he had the ability to do so), as well as evidence that Plaintiff had made conflicting statements about when he last

_____

he misses the mark. As the above-quoted language reflects, the ALJ expressly limited the pertinent portion of the discussion in question to Plaintiff's "diagnosis of depression." (Tr. 22.)

13

worked as a painter. (See Tr. 22.) The ALJ had the right to consider such matters in evaluating Plaintiff's credibility. See SSR 96-7p, 1996 WL 374186, at *4-5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").[6]

Under these circumstances, the Court should remand the case for the ALJ to address whether Plaintiff's inability to afford prescribed treatment and testing for Parkinson's would affect the assessment of the credibility of his symptom reporting, as well as (by logical extension) his RFC and the adjudication of step five.

## 2. **Treating Physicians' Opinions**

Plaintiff next argues that the ALJ erred by "essentially disregard[ing] the opinions of [his] treating physicians . . . [and] simply declar[ing] that she had given their opinions 'appropriate weight.'" (Docket Entry 18 at 9 (quoting Tr. 22).) This argument also warrants a remand.

An ALJ generally must give controlling weight to the opinion of a proper treating source as to the nature and severity of a claimant's impairment, on the ground that such sources "provide a detailed, longitudinal picture of [the claimant's] medical

---

[6] To the extent Plaintiff also challenges the ALJ's symptom credibility analysis on the ground that the ALJ's decision "embellished [Plaintiff's] hearing testimony" (Docket Entry 18 at 8), no basis for remand exists, because the ALJ's discussion of symptom credibility (and related RFC formulation) did not purport to rely on any testimony by Plaintiff about his daily activities (see Tr. 21-23).

impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).[7] This rule recognizes, however, that not all treating source opinions deserve such deference.

First, the nature and extent of each treatment relationship may temper the weight afforded. 20 C.F.R. § 404.1527(d)(2)(ii). Further, a treating source's opinion controls only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. Finally, opinions regarding the ultimate issue of disability, regardless of source, do not receive controlling weight. See 20 C.F.R. § 404.1527(e).

In this case, the ALJ found as follows:

I have considered the opinion/assigned appropriate weight to Drs. Ferguson, Braunstein, and Cartwright's opinions; on the other hand, statements of disability are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the

---

[7] Effective March 26, 2012, a regulatory change recodified the treating physician rule as 20 C.F.R. § 404.1527(c)(2), but did not impact the substantive language of the rule. See 77 F. Reg. 10651-10657 (Feb. 23, 2012). Given that all material events in this action preceded that non-substantive regulatory change, this Recommendation uses the pre-March 26, 2012 citations.

> Regulations and legal standards set forth herein.  Such
> issues are reserved to the Commissioner . . . .
> [O]pinions reserved to the Commissioner can never be
> entitled to controlling weight but must be carefully
> considered to determine the extent to which they are
> supported by the record or contradicted by persuasive
> evidence.  In that regard, I do not find the evidence of
> record supportive of the foregoing statements.

(Tr. 22 (internal citation omitted).)  The ALJ erred by dismissing
the treating physicians' opinions as "statements of disability."

More specifically, although all three of the cited doctors did
describe Plaintiff as disabled (Tr. 117, 118, 129, 137), two of
them also supplied opinions as to specific limitations attributable
to his impairments (Tr. 131-36, 143-46).  Dr. Ferguson reported
that Plaintiff could occasionally lift 10 pounds and would need
breaks from work every 20 to 30 minutes.  (Tr. 134.)  In addition,
Dr. Ferguson opined that Plaintiff could walk for no more than a
block, could sit for no more than 20 minutes at a time, could stand
for no more than 10 minutes at a time, could sit for fewer than two
hours in an eight-hour day, and could stand or walk for fewer than
two hours in an eight-hour day.  (Tr. 133.)  Dr. Ferguson further
concluded that Plaintiff could not perform even low stress jobs and
that his prognosis with respect to Parkinson's appeared poor.  (Tr.
132-33.)  Similarly, Dr. Braunstein found that Parkinson's
prevented Plaintiff from sitting or standing for more than 15
minutes at a time, that he would need to change positions
frequently, and that he could occasionally lift only 20 pounds and

could carry only 10 pounds.  (Tr. 143-44.)  Dr. Braunstein also placed significant limits on Plaintiff's ability to push, pull, grasp, finger, squat, crawl, climb, stoop, and kneel.  (Tr. 144.)

None of the foregoing opinions address ultimate issues reserved to the Commissioner.  Accordingly, the ALJ should have expressly analyzed whether they warranted controlling weight and the Court should remand the case for such analysis.  Further, if, upon remand, the ALJ concludes that the above-cited opinions of Drs. Ferguson and Braunstein should not receive controlling weight, the ALJ must state, in a manner that makes meaningful judicial review possible, what weight they should receive and why.[8]  The ALJ then must make any warranted adjustments to Plaintiff's RFC[9] and, if appropriate, must re-visit the step five determination.

---

[8] Notably, the Social Security Administration's <u>Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions</u> ("SSR 96-2p") states:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. . . .  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996).

[9] For example, after properly assessing the above-referenced medical opinions, the ALJ might need to reconsider the description of Plaintiff's Parkinson's as involving only "a mild degree of symptomatology that ha[d] not progressed to any significant degree over time" (Tr. 22).

### 3. Listings 11.06 and 12.04

Plaintiff contends that the ALJ "committed serious error when she found that [he] did not meet a listing." (Docket Entry 18 at 12.) Specifically, Plaintiff asserts that the ALJ erred because "she did not even consider his symptoms against the Parkinson's listing, despite the clear implication of the listing in this case" (id.), and because she "found that [Plaintiff] did not have functional limitations of the required severity to satisfy the [depression] listing" (id. at 14). The Court should remand for further proceedings as to Listing 11.06 (applicable to Parkinson's), but not Listing 12.04 (applicable to depression).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." Huntington v. Apfel, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986)). Here, at step two, the ALJ ruled that Plaintiff's Parkinson's constituted a severe impairment (Tr. 16-17), but did not, at step three, address Listing 11.06 (Tr. 20-21), which establishes these requirements:

> *Parkinsonian syndrome* with the following signs: Significant rigidity, brady kinesia, or tremor in two extremities, which, singly, or in combination, result in sustained disturbance of gross and dexterous movements, or gait and station.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.06.

Four doctors, including state agency consultative examiner Dr. Lori Schneider, diagnosed Plaintiff as suffering from Parkinson's. (Tr. 117, 118, 129, 132, 137, 143, 213.)  Moreover, the record contains numerous medical findings that would appear to satisfy Listing 11.06's other criteria.  (See Tr. 85, 143, 212-14, 218, 219, 221, 223, 225, 233-40.)  In the face of that evidence, Defendant argues that the ALJ "was not required to evaluate the case under Listing 11.06," because "Plaintiff had only 'early mild' Parkinson's disease and his mild symptoms did not progress to any significant degree during the relevant period."  (Docket Entry 20 at 4 (citing Tr. 197-203, 217-25).)  Defendant further contends that "Plaintiff d[id] not meet Listing 11.06" (id.) and identifies as support two state agency physicians's opinions (id. at 5).

These arguments by Defendant fall short because, assuming that the record contains evidence which would have allowed the ALJ to find against Plaintiff regarding Listing 11.06, the record also appears to contain sufficient evidence of Listing 11.06's criteria (cited above) to require the ALJ to address that listing, to resolve any conflicts in the evidence, and to explain the ultimate decision.  In other words, where the record reasonably could support a finding either way as to whether Plaintiff met Listing 11.06, "it is the role of the Commissioner to make and explain that determination and not this Court," Hood v. Astrue, No. SKG-08-2240, 2009 WL 4944838, at *6 (D. Md. Dec. 14, 2009) (unpublished).

As to Listing 12.04, however, substantial evidence supports the ALJ's determination that Plaintiff's depression did not satisfy the necessary criteria, which consists, in relevant part, of:

B. . . . [A]t least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history . . . of at least 2 years' duration . . . with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.[10]

_____

[10] In this context, to qualify as "marked," a limitation must "interfere seriously with [one's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(C); see also 20 C.F.R. § 404.1520a(c)(4) (explaining that "marked" represents the fourth-highest of five levels, below "extreme," but above "none, mild, [and] moderate"). Decompensation here refers to "exacerbations or

The ALJ expressly addressed the foregoing listing criteria, ruling first that Plaintiff suffered only moderate restriction in his activities of daily living. (Tr. 20.) In that regard, the ALJ noted that Plaintiff could drive, load the dishwasher, do the laundry, occasionally mow the grass, and "exercise some to maintain his conditioning." (Id.) Next, the ALJ concluded that Plaintiff endured only moderate difficulties in social functioning, pointing out that, although he reported "isolative behaviors," he could "associate with others in the public domain without incident" and appeared "pleasant and cooperative" at his consultative examination. (Id.) The ALJ similarly assessed as only moderate Plaintiff's difficulties with maintaining concentration, persistence, and pace, emphasizing that he could read, watch television, drive a car, and perform routine, simple daily activities. (Id.) As to the final item in the "B" cluster of functional limitations, the ALJ found that Plaintiff had not suffered any episodes of decompensation. (Id.) The ALJ then concluded that the record failed to establish the presence of any of the criteria in the listing's alternative "C" section. (Id.)

Plaintiff has failed to point to evidence that would require reversal of the foregoing findings, i.e., evidence that would have required the ALJ to find "marked" functional limitations,

temporary increases in symptoms or signs accompanied by a loss of adaptive functioning . . . ." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(C)(4).

decompensation history or risk, and/or inability to live independently. (See Docket Entry 18 at 14-17.) To the extent Plaintiff relies on the report of consultative examiner Dr. Prem K. Muthu (id. at 15-17; see also Tr. 156-59), the ALJ declined to give substantial weight to the opinions therein, because she did "not consider[] them consistent with a preponderance of the evidence of record" (Tr. 22). Given the lack of medical evidence in the record reflecting treatment for (or even documenting significant symptoms of) depression during the relevant period[11] and the fact that many of the statements in Dr. Muthu's report merely reflect Plaintiff's subjective complaints (see, e.g., Tr. 158), substantial evidence supports the ALJ's decision to discount Dr. Muthu's opinions and to rule Plaintiff's depression below listing-level.

In sum, the Court should remand the case for the ALJ to explain whether (and why) Plaintiff did or did not meet the Parkinson's listing, but substantial evidence supports the ALJ's determination that Plaintiff's depression failed to meet a listing.

## CONCLUSION

The ALJ committed three errors. First, in evaluating the credibility of Plaintiff's symptom reporting, the ALJ should have addressed whether Plaintiff's lack of funds mitigated his failure

---

[11] In fact, a state agency examiner noted the absence of any evidence of any mental impairment before April 28, 2005, approximately four months after Plaintiff's date last insured. (Tr. 176.)

to pursue prescribed treatment and testing for his Parkinson's disease. Second, the ALJ did not adequately evaluate the opinions of two of Plaintiff's treating physicians. Third, given the record, the ALJ should have expressly analyzed whether Plaintiff met the Parkinson's listing. These errors warrant a remand for further proceedings. See generally Radford v. Colvin, 734 F.3d 288, 294-96 (4th Cir. 2013) (vacating district court's order directing benefits award and instead requiring remand for additional administrative action where record reflected need for ALJ to weigh conflicting evidence, to make credibility determination, and to explain decision-making).[12]

---

[12] This Recommendation thus concludes that Plaintiff's counsel, Charlotte W. Hall of the Charles T. Hall Law Firm, P.C. in Raleigh, North Carolina, has performed a worthy professional service by bringing to light material shortcomings in the administrative process afforded her client. Unfortunately, the record also reflects that, in doing so, Ms. Hall directed unprofessional rhetoric at the ALJ. (See Docket Entry 18 at 16 (sarcastically stating: "it is unclear how the ALJ, who is not a mental health professional, felt confident enough to 'play doctor'"); Docket Entry 21 at 3 (asserting that "ALJ's reasoning was ridiculous on its face").) "Social security ALJs have difficult jobs." Hill v. Astrue, Civil Action No. 07-1028-MLB, 2007 WL 4723787, at *2 (D. Kan. Nov. 1, 2007) (unpublished); see also Martinez v. Astrue, 630 F.3d 693, 695 (7th Cir. 2011) ("We are mindful of the difficulties that the Social Security Administration's administrative law judges labor under. They have a very heavy caseload . . . [and their] [s]upport staff is inadequate."). Accordingly, they deserve respect, not ridicule, even when they make mistakes. When a lawyer reasonably believes an ALJ has made a significant error, the lawyer properly may bring that matter to the Court's attention; however, a lawyer should do so respectfully and certainly must not stoop to insults. Going forward, Ms. Hall should understand that failure to follow that standard will ill-serve her client, will damage her reputation, and will provide a basis for sanctions. See, e.g., Meyler v. Commissioner of Soc. Sec., 238 F. App'x 884, 888 n.2 (3d Cir. 2007) ("We ordered counsel's original brief stricken and a new brief filed without ad hominem attacks on the ALJ. The new brief is not much improved over the original as it continues to make disrespectful, unwarranted allegations against the ALJ. We are obliged to advise counsel that his lack of professionalism harms the interest of his client and adversely affects his credibility. Counsel must cease this unprofessional conduct or be subject to sanctions.").

**IT IS THEREFORE RECOMMENDED** that Defendant's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings: 1) to consider whether Plaintiff's financial constraints explained his failure to follow recommended treatment and testing for Parkinson's disease (thereby altering the assessment of the credibility of his symptom reporting, the formulation of his RFC, and the step five determination); 2) to re-evaluate (also in connection with Plaintiff's RFC and the related ruling at step five) the opinions of Drs. Ferguson and Braunstein regarding matters short of the ultimate issue of disability, as well as to identify the weight given to such opinions and the rationale for that weighting; and 3) to address Listing 11.06. As a result, Defendant's Motion for Judgment on the Pleadings (Docket Entry 19) should be denied and Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 17) should be granted in part and denied in part, in that the Court should remand the case, but should not order an award of benefits.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

February 10, 2014